**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
ACE AMERICAN INSURCANCE                 )
COMPANY et al.,                         )
                                        )
        Plaintiffs,                     )
                                        )
        v.                              )        Case No. 14-1992 (RCL)
                                        )
FEDERAL CROP INSURANCE                  )
CORPORATION et al.,                     )
                                        )
        Defendant.                      )
                                        )
_____)


**MEMORANDUM OPINION**


**I.    BACKGROUND**

        This case concerns a contract to reinsure crops.  The Federal Crop Insurance Corporation

("FCIC") is a government subsidized insurance provider that operates under the Federal Crop

Insurance Act ("FCIA"), 7 U.S.C. §§ 1501-1524.  FCIC is supervised by the Department of

Agriculture's Risk Management Agency ("RMA").  FCIC does not provide insurance directly to

the end policy holders, i.e. farmers.  Rather, FCIC works with "approved insurance providers"

(hereinafter "approved providers") through a "standard reinsurance agreement" (hereinafter

"standard agreement").

        Plaintiffs are approved providers who allege that FCIC improperly modified the actuarial

methodology that sets premiums for several crops.  Specifically, plaintiffs allege that they entered

into a five year standard agreement based upon representations from FCIC that the actuarial

methodology underlying premiums would not change.  It did.

Per 7 C.F.R. § 400.169, plaintiffs began pursuing their administrative remedies by contesting the premium setting methodology with the Deputy Director of Insurance Services. When unsuccessful, they appealed to the Civilian Board of Contract Appeals (hereinafter "the Board") pursuant to 7 C.F.R. § 400.169(d). Plaintiffs argued for relief on the following grounds: that the change in methodology violated 7 U.S.C. § 1508(k)(8), which limits renegotiation of financial terms and conditions in the standard agreement; breach of the duty of good faith and fair dealing; promissory estoppel; and reformation due to mutual mistake. The Board granted summary relief to FCIC. Plaintiffs proceeded to file this action "seeking relief relating to claims that are outside the scope of [the Board's] jurisdiction as well as those appealed to [the Board]. In the alternative, [p]laintiffs bring an original action seeking relief relating to claims that are outside the scope of [the Board's] jurisdiction and seek a declaration that the [Board's] Order is in error." Comp. 5, ECF No. 1.

FCIC now moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure (FRCP) 12(c) or, in the alternative, summary judgment under FRCP 56. Many of the background facts pertinent to this case have been explained in the Board's opinion that is attached to the complaint. CBCA Order, ECF No. 1-2. The Court will repeat those facts here only to the degree necessary. Given the interplay between the parties' arguments regarding issues relevant to FRCP 12(c) and FRCP 56, the Court addresses each count of plaintiff's complaint in sequence.

## II.    ANALYSIS AND DISCUSSION

### a.  Count One: Breach of Contract Under the Duty of Good Faith and Fair Dealing

Plaintiff contends FCIC breached the duty of good faith and fair dealing contained in the standard agreement by adopting a new methodology that changed premium rates for soybeans and

corn.  Comp. 24.  FCIC argues that this claim was already adjudicated by the Board and cannot now be re-litigated due to the doctrine of *res judicata*.  Mem. Supp. Mot. J. Pleadings 9, ECF No. 40.

Specifically, FCIC argues that res judicata applies to determinations of administrative agencies, *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991), that the doctrine bars suits between the same parties based on the same cause of action, *Apotex, Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004), and that claim one is the same cause of action that was dismissed by the Board, Mem. Supp. Mot. J. Pleadings 9.  Moreover, FCIC argues that while plaintiffs could have challenged the Board's opinion under the Administrative Procedures Act (APA), they expressly elected not to do so and, FCIC argues, disclaimed such a challenge per their memorandum "Reply to Response to Motion for Entry of Scheduling Order," ECF No. 14.  *Id.*

Plaintiffs argue that 7 U.S.C. § 1506 gives district courts "exclusive original jurisdiction" and thus statutorily creates a right for a separate *de novo* action.  Pl.s' Opp'n Mot. J. Pleadings 21, ECF No. 22.  Plaintiffs also argue that if this Court does review under the APA, all claims should nonetheless be reviewed *de novo, id.* at 22, and that in the alternative the Board's decision was arbitrary and capricious, *id.* at 26.

Notwithstanding Title VII, which is unique, plaintiffs are not entitled to a *de novo* proceeding in part given their own admission that the FCIA provides no standard of review.  *See Cabinet Mountains Wilderness/Scotchman's Peak Grizzly Bears v. Peterson*, 685 F.2d 678, 685 (D.C. Cir. 1982) ("Since the ESA does not specify a standard of review, judicial review is governed by section 706 of the Administrative Procedure Act").  Supreme Court precedent is squarely on point: "in cases where Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, this Court has held that consideration is to be confined

to the administrative record and that no de novo proceeding may be held." *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963).  That is precisely the case here, as the FCIA creates "exclusive original jurisdiction" for federal courts but does not provide a standard of review.  7 U.S.C. § 1506.

Defendant is also correct that plaintiffs are not bringing an APA challenge.  *See, e.g.*, Reply Resp. Mot. Entry Scheduling Order 1 ("The Complaint by its terms seeks relief that is independent of the request for review of agency action.").  Additionally, the complaint itself states:

> Plaintiffs bring an original action seeking relief relating to claims that are outside the scope of [the Board's] jurisdiction as well as those appealed to [the Board].  In the alternative, Plaintiffs bring an original action seeking relief relating to claims that are outside the scope of [the Board's] jurisdiction and seek a declaration that the [Board's] Order is in error. All claims are premised on the same operative facts.

Comp. 5.  The complaint never mentions a challenge under the APA, indeed terms such as "administrative procedures act," "APA," "arbitrary," or "capricious" do not appear at any point in the complaint.  While it is true that plaintiffs discuss the APA in their opposition to defendant's motion, "[a] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."  *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996).

As plaintiffs disclaimed an APA challenge and were unsuccessful in arguing that 7 U.S.C. § 1506 allows for a *de novo* proceeding, defendant's motion to dismiss will be granted with respect to count one.

### b.  Count Two: Promissory Estoppel

Defendant argues that count two should be dismissed as promissory estoppel provides for remedies in situations where there is no contract.  Here, there is a contract.  Mem. Supp. Mot. J. Pleadings 5.  Plaintiffs argue that the methodology for setting premiums was not part of the

4

standard agreement, and thus there is no written contract. Pl.s' Opp'n Mot. J. Pleadings 9-10. In support of this plaintiffs note that defendant and the Board argued that premium rates are not "financial terms and conditions" contained in the standard agreement. *Id.*

Plaintiffs' reading of the Board and defendant's argument is myopic. There was a proper and binding contract in the form of the standard agreement, and courts generally do not allow for promissory estoppel when a binding contract exists. *Vila v. Inter-Am. Inv., Corp.*, 570 F.3d 274, 280 (D.C. Cir. 2009). While that does not preclude claims of promissory estopped for additional promises between parties that have a separate contract, as a factual matter that does not appear to be the case here. It is clear from the text of the standard agreement, the briefings from all parties, and the Board's order, that the premiums and rate-setting methodology for the premiums were repeatedly discussed during negotiations as they closely relate to the standard agreement, though they are not defined as "financial terms and conditions" within the standard agreement. That is, the premiums and rate-setting methodology are not wholly distinct from the standard agreement, they were considered in relation to the standard agreement and the parties entered into a contract *without specifying the premiums or premium rate-setting methodology in a contract term.*

Indeed, by statute and prior practice, plaintiffs were aware that premiums and premium rate-setting methodologies were subject to change. *See* 7 U.S.C. § 1508(i) ("[T]he Corporation shall periodically review the methodologies employed for rating plans of insurance under this subchapter"). While the parties dispute precisely what representations were made by defendant to plaintiffs, this is irrelevant to the Court's analysis given the statutory text.[1] *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947). The natural reading of the standard agreement in conjunction

---

[1] Moreover, given that this is a motion to dismiss on the pleadings or, in the alternative, for summary judgment, the Court views facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

with the statute is thus that the parties entered into a contract that included premiums by reference with full awareness that those premiums and methodologies could change.  As there was a written express contract between the parties, the doctrine of promissory estoppel is inapplicable to this case.  Defendant's motion will be granted with respect to count two.

### c.  Count Three: Unjust Enrichment

Like the doctrine of promissory estoppel, the doctrine of unjust enrichment does not apply when there is a valid contract.  *Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 64 (D.C. 2005) ("One who has entered into a valid contract cannot be heard to complain that the contract is unjust, or that it unjustly enriches the party with whom he or she has reached agreement.").  Thus for the reasons articulated above, there can be no remedy through a claim of unjust enrichment in this case.  Accordingly, defendant's motion will be granted with respect to count three.

### d.  Count Four: Violation of 7 U.S.C. § 1508(k)(8)

Plaintiffs contend that defendant violated § 1508(k)(8), which limits renegotiation of "financial terms and conditions" of standard agreements to once per five year period.  7 U.S.C. § 1508(k)(8).  Procedurally, this count is in the same posture as count one, with defendant arguing both that it has already been addressed by the Board and that plaintiffs disclaimed an APA challenge.  Mem. Supp. Mot. J. Pleadings 8-9.  Like count one, plaintiffs argue this is question of law to be reviewed *de novo*.  However, they also argue that the Board lacked jurisdiction over this cause of action.  Pl.s' Opp'n Mot. J. Pleadings 24.  It is not clear why plaintiffs believe the Board lacked jurisdiction, they merely state it in a conclusory manner and proceed to discuss promissory estoppel.  *Id.*

As an initial matter the Court notes that it is difficult to engage with plaintiffs' reasoning with respect to jurisdiction as no reasoning with respect to this count is present in the one paragraph plaintiff devotes to this matter.  *Id.*  However, the Court notes that the Board has jurisdiction over FCIC actions arguably "not in accordance with the provisions of the Standard Reinsurance Agreement or any reinsurance agreement with FCIC, except compliance issues."  7 C.F.R. § 400.169.  Furthermore, the parties appear to agree that the standard agreement incorporates the FCIA by reference.  Mem. Supp. Mot. J. Pleadings 25 n. 5.  Finally, the complaint as a whole clearly describes actions the plaintiffs believe are not in accordance with the contract they entered—the standard agreement.  *See* Comp.[2]

Additionally, merely pleading that changing the rates was a statutory violation rather than an action "not in accordance with" the standard agreement is problematic.  Plaintiff's raised a functionally identical claim before the Board, with nearly verbatim language.  *Compare* Comp. 26-27 *with* JA 00005138-39.  Letting plaintiffs make the same argument in the cloak of a statutory violation outside the jurisdiction of the Board would be to sidestep the administrative regime created by Congress.  *Westberg v. F.D.I.C.*, 741 F.3d 1301, 1306 (D.C. Cir. 2014); *Steadman v. Governor, U.S. Soldiers' & Airmen's Home*, 918 F.2d 963, 967 (D.C. Cir. 1990).  Strategic drafting of a complaint ought not lead to such a result.  *Id.*

This count is set apart from claim one primarily by the conclusory statement that the Board lacked jurisdiction with regard to this issue.  That appears not to be the case, as the Board has a broad grant of authority with regard to the standard agreements.  Moreover, to the extent plaintiffs

---

[2] Plaintiff's opposition memorandum also make clear they understand the change in actuarial methodology as a breach of the standard agreement and even have a section titled "Unilateral Change in Ratemaking Methodology Is A Material Breach of the [Standard Agreement]."  Pls.' Opp'n Mot. J. Pleadings 27.  At a minimum, this count is inextricably intertwined with the question of if FCIC's actions were "in accordance with the provisions of the [Standard Agreement]."

have drafted this count outside of the jurisdiction of the Board, it appears to be strategic drafting designed to relitigate *de novo* an issue plaintiffs already lost.  Circuit precedent militates against allowing such a claim.  *Am. Nat. Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1144 (D.C. Cir. 2011) ("the court of appeals rightly noted that plaintiffs cannot circumvent [a] jurisdictional bar by drafting their complaint strategically").  As in count one, plaintiffs could have, but elected not to, challenge the Board's holding under the APA.  In light of the fact they did not do so and are not entitled to a *de novo* proceeding, defendant's motion will be granted with respect to count four.

   *e.   Count Five: Violation of 7 U.S.C. § 1508(k)(3)*

   § 1508(k)(3) states:

> The reinsurance agreements of the Corporation with the reinsured companies shall require the reinsured companies to bear a sufficient share of any potential loss under the agreement so as to ensure that the reinsured company will sell and service policies of insurance in a sound and prudent manner, taking into consideration the financial condition of the reinsured companies and the availability of private reinsurance.

   Plaintiffs allege that in changing the actuarial methodology FCIC did not consider plaintiff's financial condition, thus violating the statutory requirement.  Defendant contends as an initial matter that the Court lacks jurisdiction over this particular count as plaintiffs did not avail themselves of the administrative process, never mind exhaust it.  Mem. Supp. Mot. J. Pleadings 13.  Plaintiffs in turn argue that they were not required to administratively exhaust this count as it is based on a statute rather than the text of the standard agreement.  Pl.s' Opp'n Mot. J. Pleadings 40.

   As an initial matter, there is a difference between administrative exhaustion and jurisdictional exhaustion.  Jurisdictional exhaustion—premised on Congress' power to control the jurisdiction of the federal courts—is a question of statutory interpretation, *Avocados Plus Inc. v.*

*Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004), and there must be "sweeping and direct" statutory language depriving the courts of jurisdiction prior to exhaustion. *Id.* at 1248. Here, 7 U.S.C. § 6912(e) reads "a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction." The Court finds this is sufficiently sweeping to require exhaustion.

In the alternative, the requirement for administrative exhaustion also applies to this count. With administrative exhaustion the Court makes this decision by "balancing the interest of the individual in retaining prompt access to the federal judicial forum against the countervailing institutional interests favoring exhaustion." *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992); *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1251 (D.C. Cir. 2004). *McCarthy* lays out three factors where individual interests weight heavily against requiring administrative exhaustion, (1) the administrative remedy may lead to undue prejudice, for example from an excessive delay; (2) there may be doubt that the agency is empowered to grant the requested relief; or (3) the administrative remedy may be shown to be biased. *McCarthy*, 503 U.S. at 146-149.

The Court notes that plaintiffs availed themselves of administrative remedies for other claims and, though they were unsuccessful in those claims, there is no argument that the administrative timeframe was "indefinite" or "unreasonable." *Id.* at 148. While plaintiffs do doubt the jurisdiction and power of the Board, by statute the Board is "authorized to grant any relief that would be available to a litigant asserting a contract claim in the United States Court of Federal Claims." 41 U.S.C. § 438(c)(1); 41 U.S.C. § 607(d). Furthermore, as noted above, the statute in question is incorporated by reference into the standard agreement. Finally, there is no evidence that the Board's action is predetermined or would be the product of bias.

Weighting in favor of administrative exhaustion is the longstanding concept that agencies "ought to have primary responsibility for the programs that Congress has charged them to administer." *Id.* at 145. The FCIC administers "a complex and highly technical regulatory program," *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994), where even under this specific clause a great deal is left to the discretion of the FCIA. For example, Congress did not specify what a "sufficient share" is, what a "sound and prudent" selling and servicing of policies entails, or the contours of what it means to "take into consideration" the financial condition of the approved providers. In brief, "Congress has explicitly left a gap for the agency to fill." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). While this language speaks to the doctrine of deference, the expertise and discretionary actions of an agency underlying the deference doctrine are also a reason to favor administrative exhaustion. *See McKart v. U.S.*, 395 U.S. 185, 193-94 (1969). Moreover, administrative review allows for the creation of a record in what may be a very complicated area: how FCIC takes into account the financial situation of approved providers while ensuring they have a sufficient share of potential loss and service policies prudently.[3]

In balancing the interests on both sides, the Court finds that the balancing favors administrative exhaustion. This count is one that can reasonably be expected to hark back to issues of administrative expertise. There is little, if any, reason not to require plaintiffs to avail themselves of the administrative process that is closer to that expertise and would allow for the creation of a curated record in the event the issue is ultimately returned to a district court.

---

[3] The Court notes that administrative review could allow for this, the Court takes no position on whether this particular claim will indeed lead to the creation of such a record. Plaintiffs may elect not to pursue it, it may be subject to summary dismissal, or any number of other possible dispositions.

Accordingly defendant's motion to dismiss count five will be granted for failure to exhaust administrative remedies.

### f.   Count Six: Reformation and Rescission

In this count plaintiffs allege there was a mutual understanding between the parties that the actuarial methodology would not change.  As it did in fact change, they argue for rescission or reformation the contract.  Comp. 27-28.  Procedurally, this count is identical to count four, with defendant arguing that this was already adjudicated by the Board and that plaintiffs failed to challenge that decision under the APA.  Mem. Supp. Mot. J. Pleadings 8-9.  Plaintiffs argue that the Board lacked jurisdiction to hear that claim.  Pl.s' Opp'n Mot. J. Pleadings 24.

For the reasons articulated in the discussion of count four, defendant's motion to dismiss count six will be granted.

### g.   Count seven: Declaratory Judgment

The arguments with respect to declaratory judgment are hard to follow.  It appears plaintiffs misunderstood defendant's argument regarding the requirement for administrative proceedings to be challenged under the APA, *see* Pl.s' Opp'n Mot. J. Pleadings 17; Reply Supp. Mot. J. Pleadings 13-14, ECF No. 41, and argue that they cannot be precluded from bringing a *de novo* action if the Board's decisions are preclusive.  Pl.s' Opp'n Mot. J. Pleadings 17.  That is not defendant's argument.  Reply Supp. Mot. J. Pleadings 13-14.  In the alternative plaintiffs argue that this count would be subject to *de novo* review under the APA.  Pl.s' Opp'n Mot. J. Pleadings 22.  As previously noted however, plaintiffs disclaimed an APA challenge.  Mem. Supp. Mot. J. Pleadings 8-9.

Thus count seven appears to be a request for this Court to hold that the Board's decision was in error without plaintiffs actually challenging the Board's decision under the APA.  Plaintiffs may not do that for the same reasons articulated in count four.  Accordingly, defendant's motion to dismiss count seven will be granted.

### III.   CONCLUSION

For the reasons stated herein, upon review of the motion to dismiss, opposition, reply, and record in this case, defendant's motion to dismiss will be granted in a separate order issued this date.

IT IS SO ORDERED this _20th_ day of September, 2016.


ROYCE C. LAMBERTH
United States District Judge